UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON DYESS,<br><br>        Plaintiff,<br><br>    v.<br><br>ESTATE OF JAJUAN LEE MORTON, et al.,<br><br>        Defendants. | Case No. 20-cv-00909-HSG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 53 |

Pending before the Court is Defendant PA Solutions, Inc.'s ("PA Solutions") motion for summary judgment, for which briefing is complete. Dkt. Nos. 53 ("Mot."), 55 ("Opp."), and 57 ("Reply"). For the reasons noted below, the Court **GRANTS** the motion for summary judgment.

**I.  BACKGROUND**

On November 23, 2019, Plaintiff Cameron Dyess filed a tort action against the Estate of Jujuan Morton and PA Solutions, Inc (collectively "Defendants"). Dkt. No. 1-2 ("Compl.") at 17. On February 6, 2020, Defendants removed the action based on diversity jurisdiction. Dkt. No. 1. On January 19, 2021, PA Solutions filed a motion for summary judgment. Dkt. No. 39. On April 21, 2021, the Court denied the motion without prejudice on Rule 56(d) grounds. Dkt. No. 49. On June 30, 2021, PA Solutions filed the instant motion. Dkt. No. 53.

This action arises from a collision that occurred on December 3, 2017 at approximately 2:55 a.m., in which Plaintiff was in the car driven by his cousin, Jujuan Morton. Compl. ¶ 8.[1] On the morning of December 2, 2017, Plaintiff and Morton went to the gym. Dkt. No. 53-1 Declaration of Andrew C. Hubert ¶ 3, Ex. B Deposition of Cameron Dyess ("Plaintiff's Depo.") at

---

[1] The following facts are undisputed unless otherwise noted.

56:6-9. On that same day, they attended a wedding of Morton's friend's mother that started sometime between 4:00 p.m. and 6:00 p.m. *Id.* at 58:4-15, 71:12-16. Plaintiff recalled that Morton brought them each a drink with alcohol. *Id.* at 66:1-68:17, 141:7-11. Following the wedding, they went to City Nights Club in San Francisco and left sometime before 2:00 a.m. *Id.* at 70:20-24, 82:11-21. Plaintiff saw Morton "drink at City Nights," but could not give an estimate as to the number of drinks either had while there. *Id.* at 79:18-80:5. They later attended an event in Oakland similar to "First Friday of Oakland." *Id.* at 89:14-20, 91:23-24. Plaintiff stated that neither of them had alcohol at that event. *Id.* at 91:10-13. Following the event in Oakland, the next thing Plaintiff remembered was "[w]aking up from a coma." *Id.* at 92:3-6. Morton died from the collision, and Plaintiff survived, but sustained injuries. Plaintiff alleges that Morton "caused the vehicle to collide at high speed with a guardrail, sound wall, and a traffic sign pole, destroying the vehicle and leaving a 150-foot long debris field along the side of the interstate." Compl. ¶ 10. Plaintiff further alleges that Morton was negligent and that PA Solutions "is vicariously liable for the negligent acts and/or omissions of its agents and employees, including Mr. Morton, under the doctrine of respondeat superior." *Id.* at ¶¶ 14–21.

At the time of the incident, PA Solutions employed Morton as a robot programmer. Dkt. No. 53-2 Declaration of Keith Philliben ("Philliben Decl.") ¶ 4. PA Solutions is a "Michigan-based company that provides automation engineering solutions to the automotive industry." *Id.* at ¶ 3. "Tesla approved PA Solutions to provide personnel on an agreed upon service rates for the Tesla Project." *Id.* at ¶ 4. In September 2017 Morton began working as a robot programmer on the Tesla Project in California. *Id.* at ¶ 8. Plaintiff contends that PA Solutions had previously sent Morton on off-site projects, during which it "regularly provided [Morton] airfare, lodging, and rental vehicles." Opp. at 2; *see* Declaration of Johnathan M. Shugart ("Shugart Decl.") ¶ 3, Ex. 2 at PAS 000067.

During his stay in California, Morton drove a Dodge Charger that was a rental vehicle. *Id.* at ¶ 6. The Charger was rented "for the period of November 9, 2017 to December 4, 2017," and the "purpose of the rental was a transportation option for Morton during his stay in California." *Id.* PA Solutions "provided Morton a per diem (i.e., a daily set allowance of money for living

2

expenses, in particular meals)" and "reimbursed Morton for gas used for business travel during his stay in California." *Id.* at ¶¶ 5–6. Employees were directed to "decline [] insurance because the insurance is provided as a corporate account." Shugart Decl. ¶ 8, Ex. 7 Deposition of Lisa Hobert ("Hobert Depo.") at 17:12-21. The manager of the Tesla account, Keith Philliben, explained that he tried to facilitate carpooling to the Tesla Factory. Shugart Decl. ¶ 7, Ex. 6 Deposition of Keith Philliben ("Philliben Depo.") at 89:11-24; *see id.* at ¶ 4, Ex. 3 at PAS 000757 (email coordinating carpool efforts).

Philliben was "responsible for interfacing resource requests between PA Solutions and Tesla." Philliben Decl. ¶ 4. According to Philliben, Tesla "opted not to renew the purchase order with PA Solutions on the Tesla Project after the purchase order utilized available funds," and "PA Solutions had zero hours remaining on the purchase order" as of December 1, 2017. *Id.* at ¶ 8. On November 28, 2017, Lisa Hobert, a PA Solutions employee, emailed Philliben and Morton for a status update. Philliben Decl. ¶ 9, Ex. 1 (email exchange) at 1. On November 29, 2017, Philliben responded that he was "still trying to negotiate," but that they would "have to look at bringing [Morton] home" if "nothing positive turns up." *Id.* Philliben also separately emailed Morton stating that PA Solutions needed to book him a flight home for either Friday December 1, 2017, or Saturday December 2, 2017. *Id.* Morton asked to postpone the flight until Sunday, December 3, 2017. *Id.* Philliben approved Morton's request, but informed him that he would "have to be responsible for per diem costs for the extra days," specifically for Friday and Saturday "since [he was] taking that as personal time." *Id.* He told Plaintiff not to perform work in California after Thursday, November 30, 2017 and directed Hobert to book Morton's flight for "Sunday morning from Fremont to Detroit." *Id.*

Philliben testified that a company known as ATG that Morton had been in contact with was "inquiring to contract [] Morton" in late 2017, but he confirmed that negotiations did not result in a contract. Philliben Depo. at 44:20-45:16, 48:4-6, 48:14-25, 63:11-22. He explained that ATG had responded to his offer with a lower rate, and he does not believe that he made any effort to provide a counteroffer to ATG. *Id.* at 52:4-53:19. Philliben recalled that he had emailed Zoltan Deak, Morton's direct supervisor, about ATG's proposal on November 30, 2017 and that

3

Deak "replied to [him] something along the lines of how long it would last?" *Id.* at 49:1-10. Philliben believes that Deak's response was the "last communication on the topic." *Id.* at 49:9-12. With respect to the contract with ATG, Deak also stated that he "responded to the email" from Philliben but he "never received the response." Shugart Decl. ¶ 9, Ex. 8 Declaration of Zoltan Deak ("Deak Decl.") at 21:3-8; *see* Shugart Decl. ¶ 5, Ex. 4 at PAS 000927 (email exchange between Philliben and Deak).

As for the status of the flight, Hobert stated that documents show the booking was "initiated," but she "did not have an answer to where it ended up." Hobert Depo. at 26:18-25. She explained that "[a]dministratively, [she] may have initiated it, but it may have sat on hold, waiting for a confirmation if the individual was going or not, or it could have been left with [Morton] to say 'You need to confirm and make that call.' " *Id.* at 27:2-8.

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

**III. DISCUSSION**

As noted, Plaintiff contends that Defendant PA Solutions is vicariously liable for Morton's alleged negligence. Defendant moves for summary judgment, arguing that it cannot be held vicariously liable because Morton was not acting in the scope of his employment. The Court agrees.

"In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine." *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1004 (1995). "[T]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer." *Id.* (citation omitted). "[A]n employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer." *Id.* (citation omitted). An employee is acting within the scope of his employment "when in the context of the particular

5

enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 1003 (emphasis omitted). An employer may be vicariously liable for an employee's conduct if "the incident leading to injury [was] an outgrowth of the employment," or if the risk of tortious injury was "inherent in the working environment," or "typical of or broadly incidental to the [employer's] enterprise." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995) (internal quotation marks and citations omitted); *Purton v. Marriott Int'l, Inc.*, 218 Cal. App. 4th 499, 505, (Ct. App. 2013) (same). The "scope of employment" determination is a question of fact, unless "the facts are undisputed and no conflicting inferences are possible." *Id.* at 299 (internal quotation marks and citation omitted).

Plaintiff disputes that Defendant "simply ended [Morton's] work on the Tesla Project and ordered him to come home at the end of November, 2017." Opp. at 4. Plaintiff maintains that discussions to keep Morton in California "may have been still ongoing at the time of the incident." *Id.* at 9. Plaintiff points to the evidence showing that PA Solutions started, but never completed, an online flight reservation for Morton. *See* Hobert Depo. at 26:14-27:8; Philliben Depo. at 83:13-18. Plaintiff also contends that PA Solutions never denied ATG's offer prior to Morton's death. *See* Philliben Depo. at 52:4-53:19. Notably, other evidence supports that PA Solutions expected Morton to leave California that Sunday. Specifically, Philliben told Morton that he would not receive his normal per diem stipend for Friday and Saturday and directed him not to work in California after Thursday. Philliben Decl. ¶ 9, Ex. 1. Philliben also directed Hobert to book a flight for Morton and explained that he was not surprised that "she may have missed" the directive given it was "at the bottom of an email to [Morton]." Philliben Depo. at 83:13-25.

However, in viewing the record in the light most favorable to Plaintiff, the incomplete booking may have resulted from ongoing assessment of the contract Morton had identified, rather than some oversight. Hobert explained that "they were working on several options to keep [Morton] longer" and attributed "the lag in some of the details" to the consideration of those options. Hobert Depo. at 27:23-28:2. Given that there is no evidence of a completed flight booking or of any firm denial of ATG's offer, a reasonable juror could find that PA Solutions was

considering extending Morton's stay in California.  But in light of the discussion below, this dispute is not material.

Plaintiff contends that such ongoing discussions raise a genuine issue of material fact as to whether "PA Solutions sought to directly benefit from extending [Morton's] hotel and rental vehicle and keep him situated in California."  Opp. at 9.  But Defendant maintains that even if it "was looking to place Morton in another job in California," Plaintiff's theory would hold an employer vicariously liable for "*anything* Morton was doing" during a business trip.  Reply at 2-3 (emphasis in original).  PA Solutions argues that the law, including the cases cited by Plaintiff, requires the employee to "be doing something related to his employer's business *at the time of the accident*."  *Id.* at 3 (emphasis in original).  As noted below, the Court does not entirely agree with Defendant's interpretation of at least one of Plaintiff's cited cases.  *See Purton*, 218 Cal. App. 4th at 505.  But the Court does agree that Plaintiff's focus on the general benefit PA Solutions may have sought by keeping Morton in California to work is too broad and does not raise a genuine issue of material fact as to whether Morton was acting in the scope of his employment.

Crucially, there is no evidence tying the injury-producing conduct to Morton's employment such that a jury could reasonably find that Morton driving the Charger from a personal event "was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from the employee's duties."  *See Purton*, 218 Cal. App. 4th at 505 (internal quotation marks and citation omitted).  There is no evidence to suggest that Morton was performing work for PA Solutions when the accident occurred, or at any of the personal events that he attended that Saturday evening.  Plaintiff argues that the underlying tort was foreseeable because the collision occurred "only about 20 miles away from the Tesla factory . . . where PA Solutions was attempting to have him remain" and the "collision occurred due to the negligent driving of the Charger by [Morton], for which PA Solutions agreed to provide insurance coverage to third parties."[2]  *See* Opp. at 7, 9.  Neither of these points, particularly in light of the overall factual

---

[2] Plaintiff's arguments appear to focus solely on foreseeability.  *See* Opp. at 9-10.  To the extent Plaintiff argues that the underlying tort was typical of PA Solution's business, the Court finds that

context, rendered the accident foreseeable. And in any event, courts have held that "both foreseeability and a nexus between the tortious act and the employment are required." *Halliburton Energy Servs., Inc. v. Dep't of Transportation*, 220 Cal. App. 4th 87, 103 (Ct. App. 2013) (citing *Bailey v. Filco, Inc.*, 48 Cal. App. 4th 1552, 1560–61 (Ct. App. 1996)); *see also Jeewarat v. Warner Bros. Ent. Inc.*, 177 Cal. App. 4th 427, 435 (Ct. App. 2009) ("An essential element of respondeat superior is a causal nexus or reasonable relationship between the duties of employment and the conduct causing injury."). The undisputed facts show no nexus between Morton's activity—driving to several personal events with his cousin on a Saturday evening—and his employment. *See Halliburton*, 220 Cal. App. 4th at 104 (finding that an employee using "the company truck to accomplish [a personal activity] was insufficient to establish the required nexus between his activity at the time of the accident and his employment").

Plaintiff relies heavily on two cases, but neither involved an injury-producing incident with no connection to the workplace or a work event. In *Purton*, a hotel "held its annual holiday party as a 'thank you' for its employees and management" and "provided alcohol and permitted the consumption of [other] alcohol brought to the party." *Id.* at 503, 509. An employee drank alcohol at the work event, then went to his home, but then left to drive a coworker home and hit another car during that drive. *Id.* at 503–04, 509. The court concluded that "existing California case law clearly establishes that an employer may be found liable for its employee's torts as long as the proximate cause of the injury occurred within the scope of employment." *Id.* at 508. It further explained that "[i]t is irrelevant that foreseeable effects of the employee's negligent conduct occurred at a time the employee was no longer acting within the scope of his or her employment." *Id.*

In focusing on the proximate cause of the car accident, the court found that the evidence showed that "the party and drinking of alcoholic beverages were . . . of a conceivable benefit to" the hotel by improving employee morale and "a customary incident to the employment

---

argument unpersuasive given the purely personal nature of Morton's conduct. *Sunderland v. Lockheed Martin Aeronautical Sys. Support Co.*, 130 Cal. App. 4th 1, 11, (Ct. App. 2005) ("If an employee's act is purely personal, it is not 'typical of or broadly incidental to the employer's enterprise.' ").

8

1   relationship" in light of evidence suggesting that the hotel "impliedly permitted employees to
2   consume alcohol while on the job." *Id.* at 510. The court thus held that a reasonable jury could
3   find the employee "acted negligently by becoming intoxicated at the party" and "that this act was
4   within the scope of his employment and proximately caused the car accident." *Id.* at 506. The
5   court noted its agreement with another court's holding that "if a commercial enterprise chooses to
6   allow its employees to consume alcoholic beverages for the benefit of the enterprise, fairness
7   requires that the enterprise should bear the burden of injuries proximately caused by the
8   employees' consumption." *Id.* at 511 (quoting *Childers v. Shasta Livestock Auction Yard, Inc.*,
9   190 Cal. App. 3d 792, 810 (Ct. App. 1987)). But the court left it to the jury to determine whether
10  the employee's "act of leaving his home shortly after arriving from the party to drive a fellow
11  employee to that employee's home was so unusual or startling so as to render the car accident
12  unforeseeable." *Id.* at 511–12 (internal quotation marks and citation omitted).

13  Here, Morton did not become intoxicated at a work event, and there is no evidence to
14  suggest that PA Solutions allowed Morton to drink alcohol in any context for its own benefit.
15  Plaintiff makes no argument that Morton drinking at personal events was "of conceivable benefit
16  to" PA Solutions or a "a customary incident to the employment relationship." *See id.* at 510.
17  Though a jury could find that Morton's drinking proximately caused the car accident, there is no
18  evidence to support that drinking at any of personal events Morton attended was within the scope
19  of his employment. And to the extent Plaintiff suggests that efforts to facilitate carpooling
20  between employees at the Tesla Project is relevant, *see* Opp. at 3, the Court disagrees because it is
21  undisputed that Morton was driving with Plaintiff as the single passenger.

22  Similarly, the Court is not persuaded by Plaintiff's reliance on *Jeewarat*. In *Jeewarat*, an
23  employee attended an out-of-town business conference and his employer "approved [his] trip and
24  paid for his airfare, hotel, and airport parking." 177 Cal. App. 4th at 431. When the employee
25  later "retrieved his car" from the airport parking lot, he "did not intend to go to his office, but
26  instead planned to return to his home." *Id.* at 432. "On his way home, he drove around the studio
27  complex where his office was located without stopping and took his normal route home for
28  approximately two to three miles, until he was involved in an automobile collision." *Id.* The trial

9

court granted the employer's motion for summary judgment based on the "'going and coming rule,' which provides that an employer is not subject to vicarious liability for accidents occurring during an employee's commute to or from the workplace." *Id.* at 431.

On appeal, the court reversed based on the special-errand exception to the going and coming rule. *Id.* at 439. The court found that the evidence that the employer paid for the "airfare, hotel accommodations, and airport parking leads to a reasonable inference that [it] expected to derive a benefit from [the employee's] attendance at the conference." *Id.* at 437. The court held that "attendance at an out-of-town business conference may be considered a special errand" and that "when an employee intends to drive home from the errand, . . . the errand is concluded when the employee returns home or deviates from the errand for personal reasons." *Id.* at 431. The court reasoned that the employee "intended to return to his home, and there were no intervening personal deviations to remove him from the course and scope of employment." *Id.* at 438. Here, it is undisputed that Morton was not returning from any business-related event. Further, nothing in the record suggests that Morton was commuting to or from work, or otherwise engaged in a special errand for PA Solutions' benefit. The Court thus finds *Jeewarat* inapposite.

At bottom, the record shows that Morton was pursuing his personal interests and that his conduct had no relation to his employment. PA Solutions argues that the use of the Charger did not place his conduct in the scope of employment because Morton was engaged in exclusively personal pursuits. Mot. at 9 (citing *Halliburton*, 220 Cal. App. 4th at 102). Plaintiff makes no argument as to why this rule does not apply, and otherwise makes no effort to distinguish any of the cases PA Solutions cites. *See generally* Opp. Accordingly, the Court finds that Plaintiff has not raised a triable issue of material fact to survive summary judgment.

Lastly, Plaintiff requests that the Court defer considering the motion pending further discovery under Federal Rule of Civil Procedure 56(d). Opp. at 13. But Plaintiff's counsel filed no new supporting declaration to show that such relief is warranted. *See State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (noting that a party seeking relief under Rule 56(d) must "set forth in affidavit form the specific facts that they hope to elicit from further discovery" and "that these sought-after facts are essential to resist

10

the summary judgment motion"). The Court previously granted Plaintiff's request under Rule 56(d) to allow Plaintiff additional time to adequately respond to the first motion for summary judgment. Dkt. No. 49. The Court notes that the deadline for fact discovery has passed, *see* Dkt. No. 38, and finds that Plaintiff has not met his burden of showing that more time is necessary for discovery to oppose the motion for summary judgment. Accordingly, the Court denies Plaintiff's request.

## IV. CONCLUSION

Because there is no genuine issue of material fact as to whether Morton was acting in the scope of his employment, the Court **GRANTS** PA Solutions' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 13, 2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge